O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA D., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, <br><br>　　　　Defendant. | Case No. 2:21-cv-08900-SP <br><br> MEMORANDUM OPINION AND ORDER |

# I.
# **INTRODUCTION**

On November 12, 2021, plaintiff Patricia D. filed a complaint against defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of her application for a period of disability and disability insurance benefits ("DIB"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") erred at step three by failing to consider whether plaintiff did

1

not meet or equal Listing 8.03; and (2) whether the ALJ properly considered plaintiff's testimony.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-9; see Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-12.

    Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err at step three and properly considered plaintiff's testimony.  The court therefore affirms the decision of the Commissioner denying benefits.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff was 62 years old on the alleged disability onset date.  AR at 61.  She has a high school education and past relevant work as a customer service representative and mail carrier.  AR at 50, 222.

    On February 11, 2019, plaintiff filed an application for a period of disability and DIB, alleging an onset date of September 13, 2018.  AR at 61.  Plaintiff claimed she suffered from asthma, pemphigus, and allergies. AR at 62.  Plaintiff's application was initially denied on May 9, 2019, and upon reconsideration on May 7, 2020.  AR at 72, 87-88.

    Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ on February 24, 2021.  AR at 33-54, 58-59.  The ALJ also heard testimony from Shirley Ripp, a vocational expert.  AR at 47-48, 50, 54-57.  The ALJ denied plaintiff's claim for benefits on April 6, 2021.  AR at 15-25.

    Applying the well-established five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since September 13, 2018, her alleged onset date.  AR at 18.

    At step two, the ALJ found plaintiff suffered from the following severe impairments: pemphigus vulgaris, asthma, and right shoulder impairment.  *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). AR at 19.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the ability to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b), with limitations that she can: lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours; occasionally reach overhead to the right; climb ramps and stairs frequently; climb ladders, ropes, or scaffolds occasionally; balance, stoop, kneel, crouch, and crawl frequently; work at unprotected heights and in dust, odors, fumes, and pulmonary irritants occasionally. *Id.*

Based on this RFC, at step four the ALJ determined plaintiff was capable of performing her past relevant work as a customer service representative. AR at 24. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). AR at 25.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. AR at 1-3. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

benefits. 42 U.S.C. § 405(g). The findings and decision of the SSA must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (cleaned up). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (cleaned up).

## IV.

## DISCUSSION

**A.     The ALJ Did Not Err at Step Three**

Plaintiff contends the ALJ erred at step three. P. Mem. at 2-6. Plaintiff argues that, while she is not presently asserting she definitely met or equaled Listing 8.03, the ALJ erred by failing to explicitly address Listing 8.03 in the decision. *Id*.

At step three, Social Security regulations provide that a claimant is disabled if he or she meets or medically equals a listed impairment set forth in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings . . . we will find that you are disabled."), 404.1520(d), 416.920(d) ("If you have an impairment(s) which . . . is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience."). In other words, if a claimant meets or equals a Listing, he or she will be found disabled at this step "without further inquiry." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). In such case, there is no need for the ALJ to complete steps four and five of the sequential process. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099. To establish that an impairment is medically equivalent to a listed impairment, it is the claimant's burden to show his impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). For an impairment or combination of impairments to equal a Listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990), *superseded by statute on other grounds as stated in Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013); *see* 20 C.F.R. §§ 404.1526(a)-(b), 416.926(a)-(b). A determination of medical equivalence must rest on objective medical evidence. *See Lewis*, 236 F.3d at 514 ("A finding of equivalence must be based on medical evidence only."). "If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Commissioner] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing." 20

C.F.R. §§ 404.1526(b)(2), 416.926(b)(2).

Here, plaintiff failed to demonstrate her impairments met or were medically equivalent to any Listing.  Listing 8.03 for Bullous disease, which could include pemphigus, requires "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed."  As used in Listing 8.03, "[e]xtensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation" including:

    a.    Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

    b.    Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

    c.    Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

Listing 8.00.

As explained above, it is plaintiff's burden to establish she either meets or medically equals Listing 8.03.  Considering plaintiff explicitly concedes she "is not contending that the ALJ was required to find Plaintiff disabled under Listing 8.03" (P. Mem. at 5), it seems clear she has not met this burden, and nothing in the record suggests she could.  She nonetheless argues that evidence in the record of her history of lesions "warrant[ed] some type of discussion from the ALJ" about whether she met Listing 8.03.  *Id.*  In support of that proposition, plaintiff cites only *Lewis v. Apfel*.  But *Lewis* does not support her legal argument, and comparison to *Lewis* suggests the ALJ did not err in his step three finding.

In *Lewis*, the Ninth Circuit rejected the argument that the ALJ failed to elaborate on his determination that plaintiff's impairments did not meet or equal

any Listing. 236 F.3d at 512. Rather, it found the ALJ sufficiently discussed and evaluated evidence supporting his conclusion, even if he did not make findings regarding every potentially relevant piece of evidence. *Id.* at 513. Here, as in *Lewis*, the ALJ discussed and evaluated evidence supporting the conclusion at step three that plaintiff did not meet Listing 8.03, or any Listing. *See* AR at 20, 23 (ALJ's findings that plaintiff's oral lesions were manageable with conservative treatment, "stable," and "almost in clinical remission"; discussion of Dr. Mehlmauer's opinions on plaintiff's lesions and why ALJ found them unpersuasive). These findings constitute "an adequate statement of the foundations on which the ultimate factual conclusions are based." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (internal quotation marks omitted). "It is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Id.*

Accordingly, the ALJ did not err at step three.

**B.** **The ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff argues the ALJ failed to articulate legally sufficient reasons for discounting her testimony regarding her pemphigus vulgaris. P. Mem. at 6-9.

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017) (citing 20 C.F.R. § 402.35(b)(1)). In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds

> that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: a claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen*, 80 F.3d at 1283-84 & n.8 (9th Cir. 1996)). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Id.* at 921, 929.

The ALJ here summarized plaintiff's testimony regarding her pemphigus vulgaris as follows. At her administrative hearing, plaintiff stated she has lesions

in her mouth. AR at 20, 39, 46. She testified that her pemphigus vulgaris limited her ability to work and that her doctor told her she should not go out due to her illness. AR at 20, 46. Plaintiff's statements in her written submissions mirror her statements at the hearing. *See* AR at 221, 247-48 (statements in plaintiff's function report describing painful lesions and her doctor's orders to stay on bed rest due to her immune system being compromised).

      At the first step for evaluating plaintiff's symptom testimony, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 20. At the second step, the ALJ partly discounted plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms as not entirely consistent with the medical evidence and other evidence in the record. *Id.* Because plaintiff cleared step one and the ALJ found no evidence of malingering, the ALJ's reasons for discounting plaintiff's testimony had to be specific, clear, convincing, and supported by substantial evidence.

      The first reason the ALJ provided for discounting plaintiff's testimony was that the objective medical record did not support her complaints. AR at 20-21. Specifically, the ALJ found that while plaintiff "alleged that her impairments limited her ability to work[, t]he medical evidence, however, suggests [plaintiff's] symptoms were not as profound as she claimed." *Id.* at 21. The ALJ noted plaintiff's examinations were generally normal, showing only mild to moderate findings, namely, evidence of oral ulcers and hyperpigmented lesions that seemed to be managed by taking Prednisone, Methotrexate, folic acid, and triamcinolone ointment. *Id.* (citing AR at 362, 430, 434, 437, 440, 488, 540, 542-43, 546, 573). He noted that on November 15, 2019, while she was on Prednisone, her dermatologist reported she had been "stable" since the last visit. AR at 20 (citing AR at 437). On January 3, 2020, plaintiff's dermatologist reported that "[e]xcept

for a single oral lesion, no new mucosal/skin lesions developed and all other previous lesions have healed since the last visit." AR at 20 (citing AR at 537). That doctor further described plaintiff's pemphigus vulgaris as "[c]urrently almost in clinical remission." AR at 20 (citing AR at 538). The ALJ also cited to records suggesting plaintiff's condition "appeared to be situational and exacerbated by environmental and climate conditions." AR at 20 (citing AR at 605).

Plaintiff contends the ALJ only cited to portions of the record showing her lesions had healed and failed to address records of visits where the lesions had not healed. P. Mem. at 7. But plaintiff provides no citations to the records she claims the ALJ overlooked, aside from a reference to "medical opinions from treating sources stat[ing] that her 'debilitating' skin condition is the largest impediment" (P. Mem. at 8), which is presumably a quote from Dr. Marilyn Mehlmauer's records. *See* AR at 571-79. Contrary to plaintiff's claim, the ALJ did cite Dr. Mehlmauer's records and explained why he found them unpersuasive. AR at 23-24. The court will not second-guess the ALJ's determination that, taking all of the objective medical evidence into account, including Dr. Mehlmauer's records, plaintiff's overall condition contradicted her claims of incapacity. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citation omitted)).

Thus, inconsistency with the medical record was a clear and convincing reason to discount plaintiff's testimony. An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but lack of objective medical evidence may be one factor used to evaluate credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (asserting a lack of corroborative objective medical evidence may be one

factor in evaluating credibility). Here, the ALJ provided another clear and convincing reason for discounting plaintiff's testimony.

In particular, the ALJ noted that plaintiff's pemphigus vulgaris was able to be managed and even improved through conservative treatment. AR at 21. Evidence of conservative treatment may undermine plaintiff's testimony regarding the severity of the ailment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). An ALJ may thus discount a plaintiff's subjective complaints based on the conservative treatment they received from physicians. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment") (citation omitted); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (reasoning "conservative treatment" is indicative of "a lower level of both pain and functional limitation"); SSR 96-7 ("the [plaintiff]'s statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). Further, evidence of controlled symptoms may also be considered when evaluating a plaintiff's subjective testimony. *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (ALJ's finding that symptoms were controlled was clear and convincing reason to reject plaintiff's testimony); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits.").

As discussed above, the ALJ found that plaintiff's pemphigus vulgaris seemed to be managed with conservative treatment, including Prednisone, Methotrexate, folic acid, and triamcinolone ointment, resulting in a stable condition that was at times in remission. AR at 20. The ALJ noted that "[n]o aggressive treatment was recommended for her impairments," and "there are no hospitalizations related to her . . . pemphigus vulgaris. In fact, there is no record

that the claimant required and received intensive pain management including narcotics." AR at 21.

Plaintiff argues the ALJ's finding regarding her conservative treatment was insufficient because he did not ask during the hearing if more aggressive treatment was available, and did not cite to any such treatment that was available to her. P. Mem. at 8. But as defendant notes, plaintiff provides no legal authority for the proposition that before discounting her testimony due to conservative treatment the ALJ must identify more aggressive treatment that plaintiff did not undergo. D. Mem. at 11. Plaintiff further contends there exists no evidence of more aggressive treatment that would have been available. P. Mem. at 8. Regardless, the ALJ properly considered the fact that conservative treatment with medication was sufficient to control her symptoms.

Plaintiff also argues the ALJ inappropriately provided an expert medical opinion by "specifically cit[ing] that for Plaintiff to be believed in regards to her skin condition (pemphigus vulgaris), she would have needed to be hospitalized, undergone surgery and/or prescribed narcotics." P. Mem. at 8. But the ALJ never made such a claim. He simply noted the inconsistency between plaintiff's claims regarding the severity of her skin condition and her conservative treatment regimen. AR at 21. As explained above, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 750-51.

Accordingly, the ALJ provided clear and convincing reasons for discounting plaintiff's subjective symptom testimony.

//
//

V.

**<u>CONCLUSION</u>**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 31, 2023

SHERI PYM
United States Magistrate Judge

13